J-S14007-26
J-S14008-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ANNA CLAIRE KEHOE | : | |
| | : | |
| Appellant | : | No. 537 MDA 2025 |

Appeal from the Judgment of Sentence Entered January 22, 2025
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000915-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JACK WETZEL III | : | |
| | : | |
| Appellant | : | No. 873 MDA 2025 |

Appeal from the Judgment of Sentence Entered February 5, 2025
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000916-2022

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: JULY 30, 2026**

In these consolidated, child-abuse cases, a jury convicted Anna Claire

Kehoe and Jack Wetzel III of simple assault, aggravated assault, terroristic

threats, endangering the welfare of children, and corruption of minors.[1]  They

appeal from their respective judgments of sentence, which imposed aggregate

---

[1] ***See*** 18 Pa.C.S.A. §§ 2701(a)(1), 2702(a)(1), 2706(a)(1), 4303(a)(1), and
6301(a)(1)(i).

sentences of seven-years-and-nine-months' to 25 years' incarceration upon Kehoe and 13 to 28 years' incarceration upon Wetzel. We affirm.

In May of 2022, Kehoe and Wetzel were living together as girlfriend and boyfriend. *See* N.T., 11/13/24, at 135. Kehoe had two children, A.D. and D.D., who also resided in the home with them. *See id.* at 133. The children were in second grade and kindergarten, respectively. A.D. was seven or eight years old at the time. *See* N.T., 11/14/24, at 40. D.D. was five or six at the time. Kehoe and Wetzel were physically abusing the children. *See id.* at 30.

On multiple occasions, Wetzel hit the children with a leather belt on their buttocks. *See id.* at 31, 35, 63. Kehoe also used the belt to hit A.D. on her buttocks and "punched [A.D.] in one of [her] private areas." *Id.* The beatings and punches left bruises on A.D.'s buttocks, upper thighs, and mons pubis. *See* Commonwealth's Ex. 4-K, 4-N, 4-O, 4-Q, and 4-R. The physical assaults came without warnings, when the children "would just be playing calmly and quiet[ly] in [their] room." N.T., 11/14/24, at 34. Kehoe would use her hand to hit D.D. on the buttocks multiple times. *See id.* at 64.

Additionally, Kehoe and Wetzel would make the children stand still in a hallway together "for hours and hours and hours." *Id.* at 32-33; *see also id.* at 65. They told the children that this was "timeout" and a punishment for bad behavior. If they moved during "timeouts," Kehoe and Wetzel "would keep adding hours and hours" onto the punishment or hit D.D. on the buttocks. *Id.* at 38; *see also id.* at 66. They timed the "timeouts" on their cell phones; "told [the children] how much they were putting on the time[;]

and . . . said[, ']I'm going to add another hour[,']" if they moved. *Id.* at 41-42.

Kehoe and Wetzel also instructed the children not to report the acts of abuse. When they went outside the home, Kehoe and Wetzel both threatened the children with "hurting [them] more, and [they] had to act completely normal, like nothing happened." *Id.* at 33-34. "They both said, ['I]f you tell anybody, we're going to hurt you more.[']" *Id.* at 48. Kehoe would make the threat first, and then Wetzel would repeat it. *See id.*

The faculty at the children's elementary school observed odd bruising on the children, and their explanations as to the causes of the injury did not make sense. The school nurse reported a suspicion of child abuse to the Franklin County Children and Youth Service. C.Y.S. and the State Police investigated the nurse's suspicion. They arranged medical exams and forensic interviews for the children at the Children's Advocacy Center.[2]

The trial court described the video evidence as follows:

> In her forensic interview, [A.D.] told [Ms.] Voss [at the Children's Advocacy Center] that she and her brother were made to stand in timeout for hours and hours and hours. They had to eat lunch and breakfast in timeout. They had to stand still, and their legs got numb. If they moved, they were told they had to stay in timeout longer. This happened more than one time.
>
> [A.D.] also told [Ms.] Voss that she and [D.D.] got hit and it hurt. Kehoe hit them on the face, nose, legs, and

_____

[2] CYS recorded the forensic interviews. **See** Commonwealth's Ex. 5 and 6. However, the files on the DVD are incompatible with this Court's software. Thus, we could not play them.

arms, and they did nothing bad. [A.D.] was hit on the face with bare hands. She was hit on the butt with a belt and hands; sometimes her clothes were on, sometimes her clothes were off. She was hit on the arms and legs with bare hands. Sometimes she was hit on the legs with a belt. [A.D.] had to go to the nurse at school to get ice packs for her injuries on her face and legs, because it hurt. In particular, her cheeks hurt. She had a bruise in her private area from Kehoe punching her there. It hurt. Kehoe punched [D.D.] there, too, for no reason.

"If [D.D.] gets a butt beating, I get a butt beating. If [D.D.] gets hurt, I get hurt[," she said to Ms. Voss. A.D.] also told [Ms.] Voss that when [Wetzel] does it to [D.D.,] it hurts bad; [Wetzel did] it more to her brother, than to her.

[A.D.] told [Ms.] Voss that [Wetzel and Kehoe] told her and [D.D.] not to tell anyone about what was happening. The children were told that if they told anyone, they would beat their butts. [A.D.] was scared to tell anyone, because [Kehoe and Wetzel] said they would beat their butts really badly, so she didn't tell.

While [D.D.'s] interview with [Ms.] Voss was a bit more difficult to follow, [he told her] that [Wetzel] hit him in the balls – in his privates and then he bled. [Wetzel] hit him on the front private with the belt. [Wetzel] does everything and Kehoe does some, too. When he's getting hit, [Wetzel] tells him, "No more doing bad stuff." [Wetzel] hit him everywhere. [D.D.] demonstrated how [Wetzel] hit him on his hand. It hurt. [D.D.] said they hit his face – mostly [Wetzel]. He was hit on his cheeks.

[D.D.] said he was in the corner for the whole entire day until bedtime, because he did bad stuff. Kehoe [said] go in the corner. Kehoe [was] in his room when [Wetzel] hit[] him. He always [got] hurt. He said he got hit and had to stand in the corner every single day. The same thing happen[ed] to [A.D.] and [she] wait[ed] in her room to get punished when he's getting hurt.

Trial Court's Opinion, 5/29/25, at 5-6 (some punctuation omitted).

Following the forensic interviews, the police arrested Kehoe and Wetzel. Their cases proceeded to a consolidated jury trial. During the trial, various witnesses testified to the above facts, including the children.

Furthermore, Dr. Kathryn Crowell, a pediatrician with Penn State University Children's Health, testified as an expert in child abuse and neglect. She opined that A.D.'s injuries "were consistent with physical abuse including injuries to her face, her jaw, her neck, her thigh, and her mons pubis." N.T., 11/18/24, at 43. Dr. Crowell additionally opined that "the bruising on [D.D.'s] face, the bruising to his buttocks, the patterned bruises on his hip and his thigh, the bruising on his genitals . . . were not from normal play but are consistent with physical abuse." *Id.* at 49.

The jury convicted and the trial court sentenced Kehoe and Wetzel as described above. These timely appeals followed, and this Court consolidated them for purposes of disposition.

Kehoe and Wetzel raise the following appellate issues, which we have reordered as follows:

1.   Whether there was sufficient evidence to support Wetzel's conviction for aggravated assault.

2.   Whether there was sufficient evidence to support the Appellants' convictions for terroristic threats.

3.   Whether there was sufficient evidence to support the Appellants' convictions for corruption of minors.

4.   Whether the weight of the evidence supports Wetzel's conviction for aggravated assault.

5.  Whether the weight of the evidence supports Wetzel's conviction for terroristic threats.

6.  Whether the trial court abused its discretion when it sentenced Kehoe.

*See* Wetzel's Brief at 9-10; *see* Kehoe's Brief at 5.

First, Wetzel contends that there was insufficient evidence to convict him of aggravated assault. He claims there was no evidence that "serious bodily injury occurred" to D.D. Wetzel's Brief at 24. The record belies his claim.

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Murray***, 83 A.3d 137, 151 (Pa. 2013). "In reviewing the sufficiency of the evidence, we examine whether the evidence presented and admitted at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." ***Id.*** at 150–51.

"A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . ." 18 Pa.C.S.A. § 2702(a)(1).

Wetzel beat D.D.'s testicles with a belt until his genitalia bled. **See** Trial Court's Opinion, 5/29/25, at 6 (relating D.D.'s report to Ms. Voss during the forensic interview in the video evidence). The genitals are a vital organ of the human body for urination and reproduction. Therefore, the Commonwealth

- 6 -

not only presented evidence that Wetzel attempted to inflict serious bodily injury on D.D.'s vital urinary and reproductive organs but also that he succeeded in causing that serious bodily injury. The male genitals do not bleed without the infliction of a serious injury upon them. As a result, there was legally sufficient evidence for the jury to convict Wetzel of aggravated assault of D.D. We dismiss Wetzel's first claim of error as meritless.

Second, Wetzel and Kehoe claim that there was insufficient evidence to convict them of making terrorist threats to the children.[3]

Kehoe asserts that neither of the children "provided any testimony as to specific threats to commit crimes of violence made by [her] or any reference to specific occasions when such statements were made." Kehoe's Brief at 11. She also believes that the Commonwealth failed "to prove [she] ever formed the requisite intent to terrorize" her children. *Id.* Instead, in her mind, the children's "testimony . . . tended to show that [Kehoe's] statements . . . were sporadic and uttered in conjunction with [her] and Wetzel's physical abuse of the [children]." ***Id.***

By contrast, Wetzel contends "[c]orporal punishment is permissible in Pennsylvania." Wetzel's Brief at 27. He therefore asserts that, even though the degree of punishment that he deployed upon the "arises to criminal assault, that does not mean [that] a threat to use a belt on a child is a communicated threat to commit a crime of violence." ***Id.*** Wetzel claims he

---

[3] We reincorporate our scope and standard of review here by reference to the first appellate issue.

"was communicating an intent to commit a legal act." *Id.* And, in his view, a child's "fear of further punishment is not the same as terrorizing [the child,] which is what the statute requires." *Id.* He argues that, if this Court upholds the terroristic threats convictions "in this case, based on the statements made by the [children,] would mean that many parents across the Commonwealth who use physical discipline are committing terroristic threats against their children by talking about using corporal punishment to their children." *Id.*

In response, the Commonwealth contends that Kehoe waived her claim of insufficient evidence by failing to specify the elements of terroristic threats that the Commonwealth supposedly failed to prove in her Rule 1925(b) Statement. *See* Commonwealth's Brief at 11-12. In support of its contention that Kehoe committed waiver, the Commonwealth cites *Commonwealth v. Tyack*, 128 A.3d 254 (Pa. Super. 2015) and *Commonwealth v. Williams*, 959 A.2d 1252 (Pa. Super. 2008).

The Commonwealth admits that the trial court addressed the merits of Kehoe's sufficiency-of-the-evidence issues in its 1925(a) Opinion by adopting the analysis from its Opinion Denying Kehoe's Post-Sentence Motions. The Commonwealth asserts that the trial court's decision to address the merits of Kehoe's issues by adopting its Opinion is irrelevant to waiver. Critically as discussed below, the Commonwealth relies upon cases that are no longer good law to support that assertion.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." ***Trigg v. Children's Hospital of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. 2020).

Rule of Appellate Procedure 1925 provides, "If the judge entering the order giving rise to the notice of appeal ('judge') desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ('Statement')." Pa.R.A.P. 1925(b). "The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised **for the judge**," not for the appellate court. Pa.R.A.P. 1925 (b)(4)(ii) (emphasis added). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

In ***Commonwealth v. Rogers***, 250 A.3d 1209, 1224 (Pa. 2021), the Supreme Court of Pennsylvania overruled the precedents of this Court that compelled convicted criminals to state with specificity their basis for a claim of insufficient evidence and weight claims in their Rule 1925(b) statements, if the trial court elects to address the merits of those claims. The High Court explained its rationale as follows:

> In ***Commonwealth v. Laboy***, 936 A.2d 1058 (Pa. 2007) (*per curiam*), this Court faced a situation comparable to the present controversy. The defendant's Rule 1925(b) statement was exceedingly brief in setting forth an evidentiary-sufficiency claim. Nevertheless, the common

pleas court issued a Rule 1925(a) opinion resolving the claim on its merits. The Superior Court found the claim waived due to its brevity and did not address its merits. This Court held that the Superior Court should have afforded the requested sufficiency review, as the trial transcript was short, it was fairly evident from context that the sole legal issue was whether the defendant was vicariously liable for his co-defendant's actions, and "the common pleas court readily apprehended [Laboy's] claim and addressed it in substantial detail." ***Id.*** at 1060.

Here, the trial transcript is admittedly much longer than in ***Laboy***. Nevertheless, the weight-of-the-evidence claim was readily understandable from context. [Roger's] theory, for which he provided his own supporting testimony, was that he was innocent of all charges in relation to the three adult victims, because he did not physically attack or steal from any of them, and his intercourse with all of them was consensual. Further, and as noted, in his post-sentence motion [Roger] articulated the evidentiary-weight claim at some length as to the three adult victims, and those were the same individuals he mentioned in his Rule 1925(b) statement. The common pleas court summarized the victims' credited testimony contradicting [Roger's] theory and determined that the verdicts were not contrary to the weight of the evidence. Thus, as in ***Laboy***, the trial court had no difficulty apprehending the claim as set forth in the concise statement and addressing its substance.

This latter circumstance is particularly salient, because . . . the concise statement's purpose is to assist the trial judge in apprehending the issues and authoring an opinion accordingly for the benefit of the parties, the appellate court, and the public. If a concise statement's explanation of a particular issue is overly long, moreover, the appellant runs the risk of invoking the waiver rule on that basis. ***See*** Pa.R.A.P 1925(b)(4)(iv) (prohibiting "lengthy explanations as to any error"); 1925(b)(4)(vii) (providing, among other things, that failure to raise issues in accordance with paragraph (b)(4) results in waiver); 1925(b)(4)(ii) (mandating issues be stated concisely); *cf.* ***Eiser v. Brown & Williamson Tobacco Corp.***, 938 A.2d 417, 428 n.19 (Pa. 2007) (plurality) (observing that Rule 1925 as revised "now explains that frivolous or redundant issues continue to provide grounds for waiver, and clarifies

- 10 -

that a lengthy explanation of the claimed error(s) should not be provided in the statement").

In light of these principles, we find that the brevity of [Roger's] weight-of-the-evidence claim as set forth in his concise statement represents a good-faith attempt to comply with Rule 1925's concision requirement, and that it did not prevent meaningful appellate review. That being the case, the intermediate court should have considered the claim on its merits.

*Rogers*, 250 A.3d at 1224–25.

Under *Laboy* and *Rogers*, because the trial court addressed the merits of Kehoe's sufficiency claims, we must consider the merits of those issues as well. Had the trial court dismissed Kehoe's sufficiency issues as waived due to lack of specificity in her 1925(b) Statement and not reached the merits by referencing the court's analysis in the Opinion Denying Post-Sentence Motions, Kehoe's procedural error would have likely inhibited our appellate review. In that circumstance, dismissal based on waiver would have resulted.

However, because Kehoe's statement did not prevent the trial court from addressing her claim of error by adopting its Opinion regarding Kehoe's post-sentence motion, we may not dismiss Kehoe's sufficiency issues as waived based on the grounds that the Commonwealth asserts. We therefore turn to the merits of Kehoe's and Wetzel's arguments concerning their convictions for terroristic threats.

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another . . . ." 18 Pa.C.S.A. § 2706(a)(1).

- 11 -

Both Wetzel and Kehoe threatened to compound their physical abuse of the children if either child reported their crimes to anyone outside their home. From this, the jury could reasonably infer that both Wetzel and Kehoe made threats of violent crimes (*i.e.*, the physical abuse of simple and aggravated assault). Furthermore, the jury could reasonably infer that, based on their past sufferings, the children knew exactly what type of crimes and pain the couple were threatening to inflict upon them. Thus, the Commonwealth offered sufficient proof of the *actus reus* for both Wetzel and Kehoe.

In addition, because the threats were made not merely to make the children behave (as Wetzel suggests in his view of the facts) but instead to make them scared to report the ongoing crimes to anyone else (including their teachers, school nurses, and the police), the jury could reasonably infer that the couple made the threats with the specific intent to terrorize the children into silence. As a result, the Commonwealth also offered legally sufficient circumstantial evidence from which the jury could find that they both possessed the requisite *mens rea* for the crime of terroristic threats.

Lastly, Wetzel's policy arguments, concerning his opinion on the social utilities of corporal punishment for children, have no bearing upon our sufficiency analysis, because crimes in Pennsylvania are statutory, rather than matters of common law. We are concerned with whether the Commonwealth offered proof to establish all of the elements of the offense charged under the plain language of the statute in issue, not whether Wetzel's conviction will have a negative or positive impact on the rearing of children in this

Commonwealth.  Wetzel's public policy arguments against his conviction must be directed to the General Assembly, not this Court.

Hence, we dismiss the second appellate issue as meritless.

Third, Wetzel and Kehoe claim that there was insufficient evidence to prove that they corrupted the morals of the children.[4]  **See** Wetzel's Brief at 28-31; **see also** Kehoe's Brief at 11-12.  Again, the evidence at trial was legally sufficient.

Anyone over the age of 18, who, "by any act corrupts or tends to corrupt the morals of any minor . . . commits a misdemeanor of the first degree."  18 Pa.C.S.A. § 6301(a)(1)(i).

Here, Kehoe and Wetzel directed the children not to tell anyone about the criminal wrongs that Kehoe and Wetzel were inflicting upon them.  Thus, Kehoe and Wetzel taught them to lie to individuals in positions of authority to protect Kehoe and Wetzel.  In other words, they enlisted their victims' help in covering up their crimes by teaching the children to lie to and thereby disrespect their teachers, school nurses, and investigators of C.Y.S.

Hence, Kehoe and Wetzel clearly corrupted the morals of the children by teaching them to be dishonest citizens and that authority figures are not to be trusted, respected, or obeyed.  The jury could easily conclude that Kehoe and Wetzel thereby corrupted the morals of their minor victims.

---

[4] **See** Note 3, **supra**.

Turning to Wetzel's fourth and fifth issues, he seeks to challenge the weight of the evidence against him regarding the crimes of aggravated assault and terroristic threats. He argues *de novo* that his convictions were against the weight of the evidence. **See** Wetzel's Brief at 32-35. In fact, he explicitly reincorporates his sufficiency-of-the-evidence arguments by reference and asks this Court to substitute our view of the weight of the evidence for that of the trial court. We may not do this under our deferential standard of review for weight-of-the-evidence claims.

As Wetzel correctly admits at the outset of his brief, "Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence." **Id.** at 7 (citing **Commonwealth v. Widmer**, 744 A.2d 745 (Pa. 2000)). Wetzel needed to follow that standard of review and explain what type of abuse of discretion he believes the trial court committed and why.

The Supreme Court of Pennsylvania has repeatedly taught appellants and the bar: "An appellate court cannot find an abuse of discretion merely for an error of judgment, unless, in reaching a conclusion, the trial court overrides or misapplies the law; or its judgment is manifestly unreasonable; or the evidence of record shows that the court's judgment exercised is manifestly unreasonable or lacking in reason." **Commonwealth v. Baker**, 766 A.2d 328, 331 (Pa. 2001). Thus, the *de novo* argument which Wetzel makes in support of his fourth and fifth appellate issues cannot be squared with the abuse-of-discretion standard of review and the commands of the Supreme

Court that this Court defer greatly to a trial court's finding that a verdict is not against the weight of the evidence.

Because Wetzel does not claim that the trial court committed an abuse of discretion by finding that the jury's guilty verdict against Wetzel did not shock **that court's conscience**, he has failed to contend – much less to persuade us – that an abuse of discretion occurred. Accordingly, we dismiss both of his appellate issues concerning the weight of the evidence against him as meritless.

Finally, we consider Kehoe's application for allowance of appeal of the issue that the sentencing court abused its discretion by sentencing her in the standard range.

In this Commonwealth, a convicted person has no automatic right to appeal the discretionary aspects of her sentence. **See Commonwealth v. Clary**, 226 A.3d 571 (Pa. Super. 2020), *appeal denied*, 281 A.3d 302 (Pa. 2022). Instead, "we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether [Kehoe] preserved [her] issues; (3) whether [her] brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code." **Commonwealth v. Malovich**, 903 A.2d 1247, 1250 (Pa. Super. 2006). There is no question that Kehoe satisfied the first, second, and third parts of the analysis. Thus, we focus solely upon the fourth part of the inquiry.

Kehoe contends that her sentence of seven-years-and-nine-months' to 25 years' incarceration raises a substantial question under the Sentencing Code, even though the sentencing court imposed all sentences within the standard range. In her view, the court, by imposing most of her sentences to run consecutively, "contradicted the fundamental norms that underlie the sentencing process, [because the sentencing] court placed far greater emphasis upon the impact on the victims than any other piece of information before the court when crafting the sentences." Kehoe's Brief at 9.

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa. Super. 2012) (citations and internal quotation marks omitted).

Here, Kehoe's Concise Statement of the Reasons Relied Upon for Allowance of Appeal under Pa.R.A.P. 2119(f) does not assert a colorable argument that the sentencing court's actions were inconsistent with a specific provision of the Sentencing Code. Kehoe merely makes a bald claim that her aggregate sentence (for committing a total of nine crimes against her own children) was "unduly harsh" and "overemphasized the victims' impact statements at the expense of other relevant sentencing factors." Kehoe's Brief at 9. Moreover, she does not make a colorable argument that the sentencing court's decision to sentence all her crimes within the standard range was in

- 16 -

anyway "contrary to the fundamental norms which underlie the sentencing process." **Glass**, 50 A.3d at 727. It "is well settled that defendants convicted of multiple criminal offenses are not entitled to a volume discount on their aggregate sentence." **Commonwealth v. Lawrence**, 313 A.3d 265, 287 (Pa. Super. 2024), *appeal denied*, 327 A.3d 616 (Pa. 2024).

Kehoe's application for allowance of appeal on the discretionary aspects of her sentence is denied.

Judgment of sentence at 537 MDA 2025 affirmed.

Judgment of sentence at 873 MDA 2025 affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/30/2026